**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

DAVID NUSS,

      Plaintiff,

      v.

NOBLE ENERGY, INC., JEFFREY L. BERENSON,
JAMES E. CRADDOCK, BARBARA J. DUGANIER,
THOMAS J. EDELMAN, HOLLI C. LADHANI,
DAVID L. STOVER, SCOTT D. URBAN,
WILLIAM T. VAN KLEEF, and MARTHA B. WYRSCH,

      Defendants.
_____

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND
JURY DEMAND**
_____

Plaintiff David Nuss ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Noble Energy, Inc. ("Noble Energy" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Noble Energy by

1

Chevron Corporation ("Chevron") and Chelsea Merger Sub Inc. ("Merger Sub"), a wholly-owned subsidiary of Chevron.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Noble Energy common stock.

7. Defendant Noble Energy, an independent oil and natural gas energy company, engages in the acquisition, exploration, development, and production of crude oil and natural gas worldwide. Noble Energy's "operations in the DJ Basin," located in Colorado, "represent the largest asset within [Noble Energy's] US onshore asset portfolio." Noble Energy operates assets onshore in the U.S. and offshore in the Eastern Mediterranean and off the west coast of Africa. Additionally, Noble Energy operates a midstream segment, which includes consolidated accounts

of Noble Midstream, whose common units are publicly traded. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq under the ticker symbol, "NBL."

8. Defendant Jeffrey L. Berenson ("Berenson") is a director of the Company.

9. Defendant James E. Craddock ("Craddock") is a director of the Company.

10. Defendant Barbara J. Duganier ("Duganier") is a director of the Company.

11. Defendant Thomas J. Edelman ("Edelman") is a director of the Company.

12. Defendant Holli C. Ladhani ("Ladhani") is a director of the Company.

13. Defendant David L. Stover ("Stover") is President and Chief Executive Officer ("CEO") of the Company, as well as Chairman of the Board.

14. Defendant Scott D. Urban ("Urban") is a director of the Company.

15. Defendant William T. Van Kleef ("Van Kleef") is a director of the Company.

16. Defendant Martha B. Wyrsch ("Wyrsch") is a director of the Company.

17. Defendants Berenson, Craddock, Duganier, Edelman, Ladhani, Stover, Urban, Van Kleef, and Wyrsch are collectively referred to herein as the "Individual Defendants."

18. Defendants Noble Energy and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On July 20, 2020, Chevron issued a press release announcing that it had entered into a definitive agreement to acquire all of the outstanding shares of Noble Energy in an all-stock transaction. Under the terms of the agreement, Noble Energy shareholders would receive 0.1191 shares of Chevron for each Noble Energy share. The press release states, in pertinent part:

## **Chevron Announces Agreement to Acquire Noble Energy**

- Brings high quality assets to Chevron's global portfolio
- Proved reserves to be acquired for under $5 per oil equivalent barrel
- Delivers $300 million in anticipated annual pre-tax synergies
- Accretive to ROCE, free cash flow and earnings

July 20, 2020 06:30 AM Eastern Daylight Time

SAN RAMON, Calif.--(BUSINESS WIRE)--Chevron Corporation (NYSE: CVX) announced today that it has entered into a definitive agreement with Noble Energy, Inc. (NASDAQ: NBL) to acquire all of the outstanding shares of Noble Energy in an all-stock transaction valued at $5 billion, or $10.38 per share. Based on Chevron's closing price on July 17, 2020 and under the terms of the agreement, Noble Energy shareholders will receive 0.1191 shares of Chevron for each Noble Energy share. The total enterprise value, including debt, of the transaction is $13 billion.

The acquisition of Noble Energy provides Chevron with low-cost, proved reserves and attractive undeveloped resources that will enhance an already advantaged upstream portfolio. Noble Energy brings low-capital, cash-generating offshore assets in Israel, strengthening Chevron's position in the Eastern Mediterranean. Noble Energy also enhances Chevron's leading U.S. unconventional position with de-risked acreage in the DJ Basin and 92,000 largely contiguous and adjacent acres in the Permian Basin.

*       *       *

**Transaction Details**

The acquisition consideration is structured with 100 percent stock utilizing Chevron's attractive equity currency while maintaining a strong balance sheet. In aggregate, upon closing of the transaction, Chevron will issue approximately 58 million shares of stock. Total enterprise value of $13 billion includes net debt and book value of non-controlling interest.

The transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close in the fourth quarter of 2020. The acquisition is subject to Noble Energy shareholder approval. It is also subject to regulatory approvals and other customary closing conditions.

The transaction price represents a premium of nearly 12% on a 10-day average based on closing stock prices on July 17, 2020. Following closing of the transaction, Noble Energy shareholders will own approximately 3% of the combined company.

**Advisors**

Credit Suisse Securities (USA) LLC is acting as financial advisor to Chevron. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor to Chevron. J.P. Morgan Securities LLC is acting as financial advisor to Noble Energy. Vinson & Elkins LLP is acting as legal advisor to Noble Energy.

\* \* \*

**About Chevron**

Chevron Corporation is one of the world's leading integrated energy companies. Through its subsidiaries that conduct business worldwide, the company is involved in virtually every facet of the energy industry. Chevron explores for, produces and transports crude oil and natural gas; refines, markets and distributes transportation fuels and lubricants; manufactures and sells petrochemicals and additives; generates power; and develops and deploys technologies that enhance business value in every aspect of the company's operations. Chevron is based in San Ramon, Calif. More information about Chevron is available at www.chevron.com.

**About Noble Energy**

Noble Energy is an independent oil and natural gas exploration and production company committed to meeting the world's growing energy needs and delivering leading returns to shareholders. The Company operates a high-quality portfolio of assets onshore in the United States and offshore in the Eastern Mediterranean and off the west coast of Africa. Founded more than 85 years ago, Noble Energy is guided by its values, its commitment to safety, and respect for stakeholders, communities and the environment. For more information on how the Company fulfills its purpose: Energizing the World, Bettering People's Lives®, visit www.nblenergy.com.

20. On August 11, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

21. The Registration Statement, which recommends that Noble Energy shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Noble Energy's and Chevron's financial projections; (ii) the financial analyses performed by Noble Energy's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in

5

connection with its fairness opinion; (iii) potential conflicts of interest involving J.P. Morgan; and (iv) the sales process leading up to the Proposed Transaction.

22. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Noble Energy Board's Recommendations and Its Reasons for the Transaction; (iii) Opinion of Noble Energy's Financial Advisor; and (iv) Noble Energy Unaudited Prospective Financial Information.

23. Plaintiff may seek to enjoin the anticipated shareholder vote on the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. Unless remedied, Noble Energy shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff seeks to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Noble Energy's and Chevron's Financial Projections

24. The Registration Statement omits material information concerning Noble Energy's and Chevron's financial projections.

25. Noble Energy management prepared four separate sets of forecasts utilizing assumptions in different combinations: (i) the Base case, which purportedly utilizes Base case commodity price assumptions and base activity level assumptions; (ii) the Strip+ case, which purportedly utilizes Strip+ price commodity assumptions and base activity level assumptions; (iii) the Strip+ Low case, which purportedly utilizes Strip+ price commodity assumptions and low activity level assumptions; and (iv) the Upside case, which purportedly utilizes Upside commodity price assumptions and base activity levels (collectively, the "Financial Projections").

26.  The Registration Statement, however, fails to disclose: (1) when the sets of projections were created; (2) the differences in the assumptions between the Base case, Strip+ Case, and Upside Case; (3) the reasons for including the Strip+ Low case, which purportedly contains assumptions not present in the other cases; and (4) which set of projections that management believed were most likely to be realized.

27.  The Registration Statement also fails to disclose the following concerning the Financial Projections: (1) all line items used to calculate: (i) EBITDAX, and (ii) free cash flow; (2) the net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

28.  Throughout the sales process, the Board expressed interest in entering into a transaction that would increase the cash returned to stockholders, including through dividends. At the Board's request, J.P. Morgan performed a financial analysis of Chevron's ability to maintain its dividend and the potential impact of an acquisition of Noble Energy on Chevron (the "Chevron Dividend Analysis"). This analysis purportedly demonstrated that Chevron "had financial flexibility to continue operations and its current dividend payments until at least 2022, regardless of whether commodity prices recovered." The Board relied upon the Chevron Dividend Analysis, among other factors, in recommending that shareholders approve the Proposed Transaction.[1]

29.  The Registration Statement, however, fails to disclose the Chevron Dividend Analysis and Chevron's financial projections.

30.  When a company discloses non-GAAP financial metrics in a Registration

---

[1] The Board weighed several factors in recommending that Noble Energy shareholders vote in favor of the Proposed Transaction, including that "Chevron has historically paid an above-market stockholder dividend" and that "the Noble Energy Board believes that Chevron has significant financial flexibility to continue its current dividend payments, even assuming another two years of low commodity prices . . . [b]ased on financial analyses conducted at the request of the Noble Energy Board[.]"

7

Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

31. The disclosure of the aforementioned projected financial information is material because it would provide Noble Energy shareholders with a basis to project Noble Energy's and Chevron's future financial performance and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Noble Energy and its financial advisor, the Company's shareholders are also unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

32. Accordingly, in order to cure the materially misleading nature of the aforementioned financial projections, Defendants must provide a reconciliation table of the

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Aug. 19, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.

33. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Noble Energy shareholders.

### 2. Material Omissions Concerning J.P. Morgan's Financial Analyses

34. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by J.P. Morgan.

35. With respect to J.P. Morgan's "*Selected Transaction Multiples Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by J.P. Morgan in its analysis.

36. The Registration Statement fails to disclose the following concerning J.P. Morgan's "*Discounted Cash Flow Analysis*": (1) all unlevered free cash flows that Noble Energy was forecasted to generate during fiscal years 2021 through 2029 as used in the analysis, and all underlying line items; (2) the terminal asset values for Noble Energy; (3) the individual inputs and assumptions underlying the (i) discount rates ranging from 10% to 12%; and (ii) terminal value growth rate ranging from (1.5%) to 1.5%; and (4) the number of fully diluted shares outstanding at Noble Energy.

37. With respect to J.P Morgan's "*Analyst Price Target*," the Registration Statement fails to disclose: (1) the individual price targets observed by J.P. Morgan in its analysis; and (2) the sources thereof.

38. The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan in rendering its purported fairness opinion must be fairly disclosed to Noble Energy

9

shareholders. The description of J.P. Morgan's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Noble Energy shareholders are unable to fully understand J.P. Morgan's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Noble Energy shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving J.P. Morgan

39. The Registration Statement omits material information concerning potential conflicts of interest involving J.P. Morgan.

40. The Registration Statement provides that Noble Energy "has agreed to pay J.P. Morgan an additional discretionary fee of up to $5 million upon the closing of the merger."

41. The Registration Statement, however, fails to disclose the circumstances under which Noble Energy will pay J.P. Morgan this discretionary fee.

42. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Noble Energy shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

44. The Registration Statement omits material information concerning the sales process

leading up to the Proposed Transaction.

45. The Registration Statement provides that:

Noble Energy contacted eight infrastructure-focused entities to measure third-party interest in acquiring a portion of Noble Energy's interests in the region. Noble Energy entered into confidentiality agreements with several potential counterparties, provided due diligence materials and engaged in discussions over several months. These efforts did not result in any offers that were projected to increase value.

46. The Registration Statement provides that Noble Energy negotiated a confidentiality agreement with Chevron, "including the terms of a customary standstill provision binding on Chevron . . . [that] contained a 'fall away' provision rendering the standstill inapplicable following Noble Energy's entry into a definitive agreement to effectuate a merger," among other circumstances. Noble Energy and Chevron ultimately executed the mutual confidentiality agreement.

47. The Registration Statement, however, fails to disclose the terms of all confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

48. Without this information, Noble Energy shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for Noble Energy, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Noble Energy shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

49. The Registration Statement also fails to adequately disclose the terms and values of the "offers" received by Noble Energy.

11

50. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Noble Energy shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

53. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

54. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

55. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

56. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

57. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, those Individual Defendants were directly involved in the making of the Registration Statement.

61. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 19, 2020                                              Respectfully submitted,

**HALPER SADEH LLP**

/s/ Daniel Sadeh
Daniel Sadeh, Esq.
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*